■ In the Matter of DUNCAN PETROLEUM TRANSPORT, INC., Respondent, v AETNA INSURANCE COMPANY, Appellant, et al., Respondents. — In a declaratory judgment action to determine the duty of Aetna Insurance Company (hereinafter Aetna) to provide coverage under a policy of insurance, Aetna appeals from a judgment of the Supreme Court, Suffolk County (McInerney, J.), dated November 4, 1981, which found that it was obligated to provide coverage under the policy for claims arising from an accident on April 28, 1976. Judgment reversed, on the law, with costs, and it is hereby declared that Aetna is not required to provide coverage under the policy in issue for claims arising from the accident on April 28, 1976. On April 28, 1976 two employees of Five Boro Fuel Transport, Inc. (hereinafter Five Boro), were killed in an explosion while transferring gasoline from a Duncan Petroleum Transport, Inc. (hereinafter Duncan), tractor trailer to a Five Boro tractor trailer. After the initiation of lawsuits to recover for wrongful death and conscious pain and suffering, etc., on behalf of decedents, Duncan brought the instant declaratory judgment action seeking a ruling that Aetna was obligated to provide coverage under a certain comprehensive general liability policy. The policy provided, in pertinent part: "Exclusions This insurance does not apply: * * * (b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile * * * owned or operated by

* * * any insured * * * but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured." The policy defined "automobile" to mean "a land motor vehicle, trailer or semi-trailer designed for travel on public roads". Despite an insurer's broad duty to defend and despite an insurer's difficult burden of establishing that a policy exclusion is unambiguously applicable to the pleaded allegations of the claims in issue, it is clear that Aetna has fully met its burden by demonstrating that the aforesaid exclusion of its comprehensive general liability policy is applicable to the instant situation. Furthermore, the provision governing the parking of an automobile on premises owned by the insured simply has no relevance to this case. Ambiguity simply should not be found where none exists. Contrary to the conclusion reached by Special Term, the tractor trailer owned by the insured and involved in the accident comes within the policy definition of "automobile" (see, generally, Vehicle and Traffic Law, §§ 125, 359, subd [k]). Furthermore, the record on appeal provides nothing to challenge the compelling conclusion that the accident arose out of "the ownership, maintenance, operation, use, loading or unloading" of the tractor trailer. Duncan seeks to avoid the impact of the clear, expansive exclusion in the policy by attributing alleged nonexcluded factors as causes of the accident. Duncan claims that the accident was caused by such factors as, *inter alia,* a failure to inspect the vehicles, a failure to train and supervise personnel, the use of dangerous procedures for the transfer of gasoline, and improper maintenance and design of the vehicles. Nothing about the foregoing asserted factors, even if they were actually involved in causing the explosion, would negate the unequivocal and unchallenged fact that the accident arose out of the loading or unloading of the automobile. Duncan's factors of causation serve to do no more than provide reasons or subfactors explaining why the accident arose out of the loading or unloading of the vehicle. Acts or omissions which predated the loading operation but which allegedly brought about the explosion during the loading do not prevent invocation of the exclusion clause. Whatever the originating reason for the explosion, it arose out of the use of the vehicles while they were being loaded (see *Heiser v Gibson,* 386 F Supp 901; *State Farm Fire & Cas. Co. v Camara,* 63 Cal App 3d 48). The policy provision "but this exclusion does not apply to the *parking* of an automobile on premises owned by * * * or controlled by the named insured * * * if such automobile is not owned by or rented * * * to any insured" has no relevance to this case (emphasis supplied). The explosion resulted from the very specific loading and unloading of Duncan's tractor trailer. If the "parking" exception encompasses accidents occurring when a tanker is being loaded or unloaded in a stationary position, then the "loading or unloading" exclusion becomes a nullity for all practical purposes unless it relates to vehicles in motion while being loaded or unloaded. The policy cannot be read to achieve such an absurd result. The dissenter's arguments — not raised by Duncan itself — would render the intended broad exclusionary provision of the comprehensive general liability policy of no value and eliminate the loading and unloading exclusion. Accordingly, there must be a reversal and a declaration that Aetna is not obligated to defend Duncan under its general liability policy for claims arising from the accident on April 28, 1976. Lazer, J. P., Thompson and Bracken, JJ., concur.

Gibbons, J., dissents and votes to modify the judgment appealed from, with the following memorandum: On April 28, 1976, William H. Shine and Charles W. Rittenhouse, two employees of Five Boro Fuel Transport, Inc., were critically injured in an explosion while pumping gasoline from a trailer owned by Duncan Petroleum Transport, Inc. (hereinafter Duncan), into a trailer

owned by Five Boro Fuel Transport, Inc. Subsequently, both men died as a result of the injuries suffered in the explosion. Suits were brought to recover for wrongful death and conscious pain and suffering, etc., against various defendants, including Duncan. It is uncontested that, at the time of the accident, Duncan had two insurance policies with Aetna. One provided automobile liability coverage with limits of $100,000 per person and $300,000 per occurrence. The other is entitled "Comprehensive General Liability Insurance" and provides $300,000 coverage per occurrence for "all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage". Additionally, Duncan carried various policies of insurance with other companies in excess of Aetna's coverage. Aetna assumed, on behalf of Duncan, the defense of these actions under the automobile liability policy. However, one of the excess carriers, United States Liability Insurance Company, requested that it be permitted to assume the defense. A "Consent to Change Attorney" was entered into on April 6, 1981, thereby substituting counsel assigned by the excess carrier in place of Aetna's counsel. By petition dated May 15, 1981, Duncan, through the services of the counsel from the excess carrier, sought a declaration that the comprehensive general liability policy between it and Aetna was in force on the day of the accident; that Aetna has a duty to defend it under that particular policy; and that Aetna must indemnify petitioner to the limits of that policy for any liability incurred as a result of the two wrongful death lawsuits. Aetna opposed the petition on various grounds, and the case came on for a nonjury trial. The trial court held for petitioner Duncan. The primary argument made by Aetna at trial and on appeal is that the comprehensive general liability policy does not cover the incident as described in the underlying complaints. Reliance is placed on an exclusion in the policy which reads as follows: "This insurance does not apply: * * * (b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or (2) any other automobile or aircraft operated by any person in the course of his employment by any insured; but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured." The policy defines "automobile" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto)". The Court of Appeals has recently reiterated some of the general principles which must be applied in a case such as this. "It is a well-established legal principle that the duty of an insurer to defend is broader than its duty to pay (*Goldberg v Lumber Mut. Cas. Co. of N. Y.*, 297 NY 148, 154, *supra*). The duty to defend arises whenever the allegations in the complaint fall within the risk covered by the policy. It therefore includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased. Further, a policy protects against poorly or incompletely pleaded cases as well as those artfully drafted. Thus the question is not whether the complaint can withstand a motion to dismiss for failure to state a cause of action. Nor is the insured's ultimate liability a consideration. If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be (*International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 325; *Lionel Freedman, Inc. v Glens Falls Ins. Co.*, 27 NY2d 364, 368; *Goldberg v Lumber Mut. Cas. Co. of N. Y.*, 297 NY 148, 154, *supra*)" (*Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663, 669-670). A corollary to these principles is that where the insurance company is relying on exceptions contained in the policy to avoid a duty to

defend under that policy, "it is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation" (*International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 325). We need not decide whether, in this proceeding, Aetna should have pleaded, as an affirmative defense, the applicability of the exclusion relied on at trial and on appeal (see *Green Bus Lines v Consolidated Mut. Ins. Co.,* 74 AD2d 136, 142-143), since petitioner has never made such a claim, and it does not appear that petitioner was prejudiced by the failure to so plead (cf. CPLR 3025, subd [c]; *Family Fin. Corp. v Secchio,* 65 Misc 2d 344, 345). We thus reach the merits of Aetna's position; our task is to determine if the allegations of the underlying complaints bring those cases within the exclusion. Both the Shine and Rittenhouse complaints allege that Duncan "owned" and "operated" the terminal in East Setauket where the accident occurred. Whether or not such is, in fact, the case is irrelevant in determining whether Aetna must provide a defense under the policy, inasmuch as the duty to defend is measured by the allegations of the complaint (*Ruder & Finn v Seaboard Sur. Co., supra; Green Bus Lines v Consolidated Mut. Ins. Co., supra,* pp 144-145). By its own terms, the exclusion relied on by Aetna "does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured * * * if such automobile is not owned by or rented or loaned to any insured". It is uncontested that the trailer being loaded when the explosion occurred did not belong to Duncan. Therefore, interpreting the exclusion in the insured's favor (*Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386) to mean that it is inapplicable to accidents occurring on property owned or controlled by the insured where another's parked vehicle is involved, it is apparent that Aetna has a duty to defend under the policy. My colleagues in the majority maintain that "[i]f the 'parking' exception encompasses accidents occurring when a tanker is being loaded or unloaded in a stationary position, then the 'loading or unloading' exclusion becomes a nullity for all practical purposes". Such is not the case. The "parking" exception found in the exclusionary clause at issue creates a distinct subclass within the class of accidents "arising out of the ownership, maintenance, operation, use, loading or unloading" of an automobile. That subclass, for which general liability coverage exists, pertains to accidents occurring "on premises owned by, rented to or controlled by the named insured", where the accident involves a parked vehicle "not owned by a rented or loaned to any insured". Obviously, the subclass is not coextensive with the class, and there are many circumstances where general liability coverage would not be provided. The applicability of the comprehensive general liability policy is established on other grounds as well. The Rittenhouse complaint sounds in negligence, breach of warranty, and in strict liability, premising liability on, among other things, allegations that the vehicles were "inherently dangerous and unsafe," that they had latent "defects", that Duncan had failed to provide "adequate warning materials and instructions", that it had failed to "properly inspect said trucks", and that it had "ordered and directed inherently dangerous procedures for the transfer and transportation of petroleum products". The Shine amended complaint makes similar allegations. These theories of recovery are not directly related to " 'the ownership, maintenance, operation, use, loading or unloading' " of the trailers in the accident (*Lalomia v Bankers & Shippers Ins. Co.,* 35 AD2d 114, 116; *Heritage Mut. Ins. Co. v Hunter,* 63 AD2d 200, 202). Rather, liability is claimed for some acts and omissions distinct from and, in fact, predating the employment of the vehicles at the time of the accident. Thus, it may not be said that "the allegations of the complaint cast that pleading solely and entirely within the policy exclusions" (*International Paper Co. v Continental Cas. Co.,*

35 NY2d 322, 325, *supra*). In *Lalomia v Bankers & Shippers Ins. Co. (supra)*, this court considered the same liability policy exclusion as is involved here, in a case where, in the underlying negligence action arising out of a motor vehicle accident, the defendant was accused of negligently placing a motorized bicycle in the possession of a 12-year-old boy. We held (p 117): "[t]his theory of action is not directly related to the 'ownership, maintenance, operation, use' of the vehicle [the motorized bicycle] and imposes an obligation upon the insurer within the terms of its policy". The same conclusion should be reached here. If it is shown that the explosion did not occur on property "owned by, rented to or controlled by" Duncan, then Aetna's obligations, under the comprehensive general liability policy, should be limited solely to the theories of liability set forth above, which are not directly related to the circumstances found in the exclusion (*Lalomia v Bankers & Shippers Ins. Co.*, 35 AD2d 114, 117-118, *supra*). Of course, that would not preclude the plaintiffs in the underlying actions from attempting to prove liability under theories which would come under the exclusion in the comprehensive general liability policy. However, in that circumstance, Aetna's only possible obligations would be those found in the policy providing automobile liability coverage. Accordingly, the judgment being appealed from should be modified to so provide. I also note that Aetna's counsel consented to withdraw as attorney for Duncan under the belief that the only policy relevant to the accident was its automobile policy. Were we to hold, as I believe we should, that the complaints on their face bring into application the comprehensive general liability policy, and since that policy gives Aetna the right, as well as the duty, to represent its insured, Aetna might desire to assume again the defense of Duncan in the wrongful death actions. Of course, in such event, if Duncan and the interested insurance companies wished a change in counsel, appropriate steps could be taken.