62 F.3d 1414
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CHARTER OAKS FIRE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Carol CLAYTON, an individual; Carol Clayton, as
Administratrix of the Estate of James F. Sullivan, III,
deceased, and as Administratrix of the Estate of James F.
Clayton, deceased; Teresa D. Snyder, as Administratrix of
the Estate of Stephen William McKinney, deceased, and
natural guardian of Lysette D. McKinney and Joshua A.
McKinney, infant children of Stephen William McKinney,
deceased; Andrew S. Nason, as Ancillary Administrator for
Robert J. Lagonterie and Joseph H. Curran, Co-Administrators
of the Estate of Joseph R. Curran, Angela B. Curran and
Kristin Curran, deceased; Andrew S. Nason, as Ancillary
Administrator for Joseph H. Curran, Administrator of the
Estate of Joseph M. Curran, deceased; Robert J. Lagonterie,
an individual; Joseph H. Curran, an individual, Defendants-Appellants,
and
Double B Auto Sales, Incorporated, a corporation; Manuel A.
Cruzado, Jr., an individual, Defendants.
 No. 94-2393.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1995.
Decided: Aug. 9, 1995.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, District Judge. (CA-93-103)
 ARGUED: Michael Majewski, Mineola, NY, for Appellants.
 Gordon Harrison Copland, STEPTOE & JOHNSON, Clarksburg, WV, for Appellee.
 ON BRIEF: Brent D. Beveridge, BEVERIDGE LAW OFFICES, Fairmont, WV, for Appellants.
 Robert G. Steele, Amy M. Smith, STEPTOE & JOHNSON, Clarksburg, WV, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Defendants-Appellants, administrators of the estates of eight individuals who died in a multi-vehicle accident and other surviving family members of the decedents, appeal the district court's decision that Plaintiff-Appellee Charter Oak Fire Insurance Company (Charter Oak) was not obligated to defend against or provide coverage for Appellants' tort claims stemming from the accident. We affirm.
 
 I.
 
 2
 This case arises out of an accident that occurred on July 26, 1990, when a motor carrier tractor-trailer owned by Double B Auto Sales (Double B) and operated by Manuel A. Cruzado, Jr., collided with two automobiles at a highway construction zone on Interstate 79 in Braxton County, West Virginia. The eight individuals who occupied the two automobiles died in the accident.
 
 
 3
 The fatal injuries in the accident were due in part to the fact that, after all the vehicles came to rest, a 1990 Lincoln Continental, which was attached on the carrier's overhead ramp, fell from the carrier and landed on top of one of the automobiles, a 1979 Dodge Aspen. The Lincoln's fall proximately resulted from the fact that Cruzado had negligently secured the Lincoln on the carrier in Florida a few days before the accident. Due to the impact from the fall of the Lincoln, the roof of the Aspen collapsed and the passenger in the back seat suffered multiple head injuries. Taking into account the prompt emergency response by the state police, fire departments, and rescue personnel, the National Transportation Safety Board concluded, "If the Lincoln on the head ramp had been properly restrained, the roof of the Aspen would not have been crushed, and one or more of the occupants of the Aspen may have survived by escaping or being extricated by rescuers from the windows or door on the left side of that vehicle." Instead, all three occupants of the Aspen died from heat trauma. All five occupants of the other automobile similarly died from heat trauma.
 
 
 4
 At the time of the accident, Double B and Cruzado, as an employee of Double B, were insured by Charter Oak under a commercial general liability policy effective April 2, 1990, through April 2, 1991. Among other limitations, the declarations under the policy provides a $1,000,000 "General Aggregate Limit (Other than Products Completed Operations)" and a $1,000,000 "Products-Completed Operations Aggregate Limit." The commercial liability coverage form includes three subsections under the section for "coverages": (a) bodily injury and property damage liability; (b) personal and advertising injury liability; and (c) medical payments.
 
 
 5
 The subsection for bodily injury and property damage liability begins:
 
 
 6
 We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
 
 
 7
 Joint Appendix (J.A.) 94. The subsection then lists several exclusions, and the exclusion most relevant to this appeal is the "auto use" exclusion:
 
 
 8
 2. Exclusions.
 
 This insurance does not apply to:
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 g. Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".[1]
 
 
 12
 J.A. 95. The final section of the coverage form is the definition section, which includes a definition for "products-completed operations hazard":
 
 
 13
 11.a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work"....
 
 
 14
 c. This hazard does not include "bodily injury" or "property damage" arising out of:
 
 
 15
 (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it ....
 
 
 16
 J.A. 101 (emphasis added).
 
 
 17
 After the accident, the estates of the eight decedents instituted three separate civil actions in West Virginia state court against Double B, Cruzado, and numerous other defendants. On June 30, 1993, Charter Oak commenced the instant declaratory judgment in federal district court in the Northern District of West Virginia. In the action, Charter Oak sought a declaration that it was not obligated to defend or indemnify Double B or Cruzado in connection with the civil actions filed in state court. The parties agreed that no discovery was required and filed cross-motions for summary judgment.
 
 
 18
 On September 27, 1994, the district court held that the insurance policy Charter Oak provided to Double B excluded coverage for the accident, such that Charter Oak was not obligated to defend or indemnify Double B or Cruzado. Accordingly, the district court granted Charter Oak's motion for summary judgment. This Court reviews the grant of summary judgment de novo, applying the same standard as did the district court. Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir.1993).
 
 II.
 
 19
 The parties' dispute in this case centers on whether, under New York law,[2] the auto use exclusion or the "products-completed operations hazard" provision controls Charter Oak's coverage obligations for the accident on July 26, 1990. Charter Oak contends that the policy does not cover the accident because the auto use exclusion excludes the accident from coverage. Appellants contend that the exclusion does not apply, and that if the exclusion applies, an ambiguity exists in the policy because the accident is covered under the "loading or unloading" exception to the transportation of property exclusion in the products-completed operations hazard provision, quoted above. The presence of such an ambiguity, Appellants assert, would trigger the general rule that ambiguity in an insurance policy must be construed against the insurer and in favor of the insured. See, e.g., Breed v. Insurance Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y.1978); Sincoff v. Liberty Mut. Fire Ins. Co., 183 N.E.2d 899, 901-02 (N.Y.1962). Under New York law, "[a]n insurance policy ... is in essence a contract and must be construed in accordance with the intent of the parties as expressed in the clear language of the policy." Ruggerio v. Aetna Life & Casualty Co., 484 N.Y.S.2d 106, 107 (N.Y.App.Div.1985) (citing, inter alia, Zappone v. Home Ins. Co., 432 N.E.2d 783 (N.Y.1982)).
 
 A. Auto use exclusion
 
 20
 Before we address any alleged ambiguity in the policy, we must first consider whether the auto use exclusion applies to the accident in question. In debating the applicability of the exception, the parties primarily disagree about the relevance of two New York decisions that have addressed the scope of auto use exceptions in insurance contracts. In the first case, Duncan Petroleum Transport, Inc. v. Aetna Insurance Co., 466 N.Y.S.2d 394 (N.Y.App.Div.), aff'd on mem. of App. Div., 460 N.E.2d 229 (N.Y.1983), two employees of a third party company were killed while transferring gasoline from the insured's truck to the third party's truck. The insured claimed that the auto use exclusion did not apply because the accident arose from such factors as a failure to inspect the vehicles and a failure to train and supervise personnel. The court, however, held that the exclusion barred recovery, reasoning that the insured's factors of causation did not change the fact that the explosion occurred during the use of the insured's vehicle while the vehicle was being unloaded. As in this case, "use" was defined in the policy to include the loading or unloading of vehicles. Id. at 395.
 
 
 21
 In the second case, Ruggerio v. Aetna Life & Casualty Co., 484 N.Y.S.2d 106 (N.Y.App.Div.1985), the court addressed whether the auto use exclusion excluded claims against an insured taxicab company for negligent hiring of an incompetent and unlicensed driver, and for negligent entrustment of an automobile to the driver when he was intoxicated. Paralleling the reasoning in Duncan, the court held that the accident arose out of the use of the taxicab and denied coverage. The court stated that the insured's antecedent negligence in hiring or dispatching the employee was irrelevant because it only " 'provide[d] reasons or subfactors' explaining why the accident arose out of the operation of an automobile." Id. at 106-07 (quoting Duncan, 466 N.Y.S.2d at 395).
 
 
 22
 Appellants argue that the auto use exception does not apply to all the injuries sustained in this accident because the descent of the Lincoln from the motor carrier does not amount to an accident arising from the "use" of the carrier. Appellants emphasize that Cruzado's negligence in improperly securing the Lincoln constituted a separate cause that aggravated the various injuries suffered. They attempt to distinguish Duncan by arguing that the accident in Duncan occurred during the loading process. Appellants contend that condition created during the loading process in this case was completed prior to the accident and fell within the products-completed operations hazard provision, which, they contend, shapes the scope of products completed operations coverage under the Charter Oak policy.
 
 
 23
 From the courts' reasoning in Duncan and Ruggerio, Appellants' asserted temporal distinction is immaterial to the applicability of the auto use exclusion as long as the injuries at issue resulted from the "use" of an insured vehicle as defined under the policy. In this case, the disengagement of the Lincoln clearly arose out of Cruzado's use of the insured motor carrier. Cruzado's negligence in securing the Lincoln did not result in any injuries until he operated or "used" the motor carrier and initially collided with the Aspen, setting in motion the chain of events ultimately resulting in the disengagement of the Lincoln. See Ruggerio, 484 N.Y.S.2d at 106 (agreeing with the Trial Term's reasoning that no harm was done until the driver "got behind the wheel of an automobile"). We thus find that the accident in question is unambiguously excluded by the auto use exclusion in the policy.
 
 B. Products-completed operations hazard
 
 24
 Given our finding that the auto use exclusion applies, we must resolve the alleged ambiguity that exists in the policy because the disengagement of the Lincoln also appears to be included within the "loading or unloading" exception to the transportation of property exclusion in the products-completed operations hazard provision. Appellants thus rely on this "loading or unloading" exception to contend that the accident is covered under the Charter Oak policy. The language of the products-completed operations hazard provision in this case is identical to the language at issue in Marcum Trucking Co. v. USF & G Co., 438 S.E.2d 59 (W.Va.1993). In Marcum, an overloaded coal truck struck other vehicles and a pedestrian after it encountered the site of an accident on the highway. Evidence in the case indicated that the overload increased the injuries sustained from the accident because it contributed to the truck's overturning, resulting in the death of a second pedestrian. Interpreting the ambiguity in favor of the insured, the Supreme Court of Appeals of West Virginia held that the accident was covered under the policy because "it is not at all unreasonable" for insureds to read the "loading or unloading" exception in the products-completed operations hazard provision and construe it to provide coverage. Id. at 63.
 
 
 25
 Although New York has not addressed the precise alleged ambiguity in this case as has the Supreme Court of Appeals of West Virginia, we agree with the district court that application of New York rules for interpreting insurance policies results in a different conclusion than the one reached by the West Virginia court. In New York, the general rule relevant to the question of whether a clear exclusion of coverage is rendered ineffective by an exception to another exclusion was established in Zandri Construction Co. v. Firemen's Insurance Co. of Newark, 440 N.Y.S.2d 353 (N.Y.App.Div.), aff'd sub nom., Zandri Construction Co. v. Stanley H. Calkins, Inc., 430 N.E.2d 922 (N.Y.1981). Zandri involved two different general liability policies that contained exclusions for certain breach of warranty claims against the insured. The insured was a construction contractor who had built a church, later alleged to be defective and in breach of warranty. The insured argued that liability for the alleged breach of warranty was covered, notwithstanding three exclusions, because of an alleged conflict with a separate exclusion "(a)." Exclusion "(a)" contained an exception providing that it did "not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." Id. at 355.
 
 
 26
 The Appellate Division determined that the three exclusions clearly precluded coverage for the claims, and the court rejected the insured's argument that the exception in exclusion "(a)" "created an ambiguity" with respect to the other exclusions. The court reasoned that the doctrine of ambiguity "is not a rule of law to be rigidly applied when there is de minimis conflict that readily gives way when a full reading of the policy makes the intent of the policy clearly discernible." Id. In holding that the exclusions precluded coverage despite the exception in exclusion "(a)," the court announced the general rule that "[e]xclusions in policies of insurance must be read seriatim, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another." Id. at 356.
 
 
 27
 The holding in Zandri was followed in Rhinebeck Bicycle Shop, Inc. v. Sterling Insurance Co., 546 N.Y.S.2d 499 (N.Y.App.Div.1989), a case on which the district court explicitly relied. In Rhinebeck, the insurer denied coverage to a bicycle retailer being sued for negligent assembly and breach of the implied warranty of fitness. The insurance policy at issue had an exclusion precluding the suit from coverage because the suit claimed bodily injury within the policy definitions of "products hazard" and "completed operations hazard." An exception to an exclusion for contractual liability, however, stated that the exclusion did "not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured would be done in a workmanlike manner." Id. at 501. The insured argued that this exception granted coverage for the breach of warranty claims, therefore creating an ambiguity in the policy by conflicting with the products hazard and completed operations hazard provisions. Citing Zandri, the court rejected this argument and held, "We conclude that where, as here, the policy contains provisions which clearly and specifically exclude certain risks, such provisions take precedence over other clauses which may describe or acknowledge general areas of coverage, such that no genuine ambiguity arises." Id. (citing Zandri, 440 N.Y.S.2d at 355-56); see also Jakobson Shipyard, Inc. v. Aetna Casualty & Sur. Co., 775 F.Supp. 606 (S.D.N.Y.1991) (discussing Zandri and Rhinebeck to hold that clearly applicable exclusion trumped exception in another exclusion), aff'd on other grounds, 961 F.2d 387 (2d Cir.1992).
 
 
 28
 Appellants attempt to distinguish Zandri and Rhinebeck by arguing that the insurance policies at issue in those cases did not contain products-completed operations coverage. They contend that the courts in those cases were unwilling to create new coverage on the basis of an exception to an exclusion when the coverage in question was specifically excluded in another provision. Appellants argue that the holdings of Zandri and Rhinebeck are inapplicable where, as here, the underlying policy already contains products-completed operations coverage. They contend that the ambiguity in the Charter Oak policy is more than de minimis because an express grant of products completed operations coverage is at odds with the auto use exclusion. In contrast, Charter Oak contests the core of Appellants' argument because it contends that the underlying policy does not contain products-completed operations coverage.
 
 
 29
 We need not decide whether the Charter Oak policy includes products-completed operations coverage because accepting Appellants' assertion that the policy contains such coverage does not decrease the relevance of Zandri and Rhinebeck.[3] Zandri and Rhinebeck clearly hold that a specific and unambiguous exclusion overrides other provisions which might provide coverage. See Zandri, 440 N.Y.S.2d at 356; Rhinebeck, 546 N.Y.S.2d at 501-02. The courts' holdings in both cases do not contain any limitation to specific types of coverage or specific exclusions; the rules from the cases apply to this case regardless of whether the policy in this case provides products-completed operations coverage.
 
 
 30
 Moreover, contrary to Appellants' assertions, the court in Zandri did interpret the policy in question to provide completed operations coverage in insuring "bodily injury or damage to property other than to the product or completed work itself, and for which the insured might be found liable." Zandri, 440 N.Y.S.2d at 355. Additionally, in Rhinebeck, whether the exception to the contractual liability exclusion provided warranty coverage for completed operations was not critical because the court assumed that the exception "might be construed" to provide such coverage. Rhinebeck, 546 N.Y.S.2d at 501-02. In fact, the court's implicit observation that it was irrelevant whether the policy actually provided such coverage is supported by the court's reliance on Tiano v. Aetna Casualty & Surety Co., 301 N.W.2d 476 (Mich.App.Ct.1980). In Tiano, a Michigan appellate court held that the identical exclusions and exceptions at issue in Rhinebeck did not create an ambiguity "regardless of whether coverage for those hazards was provided for by the general coverage provisions of the comprehensive general liability insurance portion of the policy or by an exception to an exclusion from those general coverage provisions." Id. at 480 (quoting Roberts v. P. & J. Boat Serv., Inc., 357 F.Supp. 729, 733-34 (E.D.La.1973)), quoted in Rhinebeck, 547 N.Y.S.2d at 502.
 
 
 31
 The West Virginia court in Marcum found an ambiguity in the policy at issue by reasoning that insureds could read by itself the "loading or unloading" exception in the products-completed operations hazard provision and understand the exception to provide coverage. Marcum, 438 S.E.2d at 63. New York rules of construction, however, require the court to look at the entire policy and attempt to find the intent of the parties from every part such that no provision is rendered superfluous. Bretton v. Mutual of Omaha Ins. Co., 492 N.Y.S.2d 760, 763 (N.Y.App.Div.), aff'd, 489 N.E.2d 1299 (N.Y.1985); Loblaw, Inc. v. Employers' Liab. Assurance Corp., 446 N.Y.S.2d 743, 745 (N.Y.App.Div.1981), aff'd, 442 N.E.2d 438 (1982). Additionally under New York law, courts are to measure the plain meaning of the policy not from the point of view of a lay person but from the understanding of a person engaged in the insured's business. In re Ambassador Group, Inc. Litig., 738 F.Supp. 57, 62 (E.D.N.Y.1990); Moshiko, Inc. v. Seiger & Smith, Inc., 529 N.Y.S.2d 284, 288 (N.Y.App.Div..), aff'd on op. of App. Div., 529 N.E.2d 420 (N.Y.1988).
 
 
 32
 As held above, the auto use exclusion clearly excludes coverage for the accident in question. Our central concern therefore is whether the "loading or unloading" exception in the products-completed operations hazard provision creates a reasonable ambiguity for Double B, as a business engaged in hauling and dealing automobiles. The district court concluded, "While there is de minimis conflict in the policy, the overall intent is to exclude coverage." J.A. 230. We agree. The unequivocal auto use exclusion demonstrates that the parties intended that the Charter Oak policy would not provide coverage for auto accidents. Double B purchased auto liability insurance from another insurer through the New York Assigned Risk Pool, and the auto liability policy provides coverage for auto accidents in language that tracks the auto use exclusion in the Charter Oak policy. Furthermore, as the district court observed, interpreting the Charter Oak policy to provide excess auto coverage is inconsistent with the fact that Double B could not obtain auto insurance on the open market because its exposure was deemed too great. From the reasoning in Zandri and Rhinebeck, we thus conclude that any potential ambiguity caused by the products-completed operations hazard provision is de minimis and does not override the clear applicability of the auto use exclusion.
 
 III.
 
 33
 For the foregoing reasons, we affirm the decision of the district court granting summary judgment to Charter Oak.
 
 AFFIRMED
 
 
 [1]
 "Loading or unloading" is defined in the policy as the handling of property:
 a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
 b. While it is in or on an aircraft, watercraft or "auto"; or
 c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;
 but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".
 J.A. 100-01.
 
 
 [2]
 The parties agree that New York law governs the interpretation and application of the Charter Oak policy
 
 
 [3]
 For this reason, we deny Appellants' outstanding motion to take judicial notice of the Record on Appeal in Rhinebeck