[706 NYS2d 377]

UNITED STATES FIRE INSURANCE COMPANY et al., Appellants, v
NEW YORK MARINE AND GENERAL INSURANCE COMPANY,
Respondent.

First Department, March 21, 2000

### APPEARANCES OF COUNSEL

*Sheila L. Birnbaum* of counsel (*Mary Ann Le Fort* and *Hayden A. Coleman* on the brief; *Skadden, Arps, Slate, Meagher & Flom, L. L. P.*, attorneys), for appellants.

*David H. Fromm* of counsel (*Morgan Heyer* on the brief; *Brown Gavalas & Fromm, L. L. P.*, attorneys), for respondent.

### OPINION OF THE COURT

FRIEDMAN, J.

This action arises from an accident in which a passenger car struck a Nassau County Bridge Authority (NCBA) pickup truck that was left on the roadway of the bridge. The question presented is whether NCBA's general liability insurance carrier may deny coverage based upon an automobile exclusion clause in its policy where the underlying complaint asserts, *inter alia*, negligence in the operation of the bridge, as opposed to the use of the vehicle. We conclude that coverage was properly denied.

On September 3, 1990, plaintiff NCBA experienced problems with two of its tollgates. In order to curb the flow of traffic to the nonoperational tollgates, the bridge operator directed a maintenance man, plaintiff Vincent LaRocco, to use a NCBA pickup truck to block the right and center northbound lanes. LaRocca placed the truck as directed. Thereafter, a car, which was headed north and occupied by a driver and two passengers, drove into the stationary pickup truck.

The collision spawned three separate personal injury actions by the driver and passengers of the vehicle that struck the pickup truck. In sum and substance, these complaints alleged negligence on the part of NCBA and LaRocco in failing to properly operate the pickup truck. The complaints also asserted that NCBA was negligent in its management and operation of the bridge by failing to limit the speed on the bridge and properly warn approaching drivers that there was a dangerous condition on the bridge, namely, a stopped vehicle in the road.

NCBA timely notified both its automobile insurer, plaintiff United States Fire Insurance Company (United), and its general liability carrier, defendant New York Marine and General Insurance Company (Marine), of the various claims. Marine denied coverage based on the automobile exclusion clause of its policy, which provides: "This insurance does not apply * * * to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of * * * any

automobile * * * owned or operated by or rented or loaned to any insured."

Plaintiffs commenced the instant declaratory judgment action alleging that Marine had a concurrent duty (along with United) to indemnify NCBA and LaRocco in each of the three personal injury actions. In this regard, it was argued that there were multiple theories of negligence being asserted in the underlying personal injury actions and since some of them were based upon NCBA's allegedly negligent operation of the bridge, Marine's general liability policy was implicated.

Thereafter, prior to trial of any of the underlying negligence actions, United, acting on behalf of NCBA and LaRocco, settled the claims of the two passengers. Marine did not participate in the settlement negotiations, taking the position that the accident was not within the scope of coverage under its policy of insurance. Meanwhile, the negligence action brought by the driver of the vehicle proceeded to trial with the jury rendering a verdict finding that NCBA and LaRocco were not negligent.

After the verdict, United moved for summary judgment in this declaratory judgment action seeking a ruling that Marine was required to indemnify LaRocca and NCBA. Such a ruling would result in Marine being obligated to share the cost of the settlements paid by United.

Marine cross-moved for summary judgment dismissing the complaint, arguing that the automobile exclusion clause of its policy was applicable, so that there was no coverage for accidents involving motor vehicles. Marine also contended that the jury verdict in the driver's personal injury trial, which found NCBA and LaRocco free of negligence, collaterally estopped plaintiff's claims in this action. Pointing to this, Marine argued that the jury, by its verdict, necessarily concluded that NCBA and LaRocco were not negligent in the operation of the bridge so that Marine's general liability policy was not implicated. Supreme Court, agreeing with Marine, granted its cross motion and dismissed the action. In our view, determination of the declaratory judgment action in favor of Marine was proper since the automobile exclusion clause of its policy applied. It follows that there is no need to reach the issue of collateral estoppel.

Initially, it can hardly be debated that an accident in which one vehicle collides with another vehicle that has been improperly left in the middle of a roadway arises out of the use of the stationary vehicle. In this connection, when used in automobile exclusion clauses, the words "arising out of the

* * * use" are deemed to be broad, general, comprehensive terms " ' " 'ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle' " ' " (*New Hampshire Ins. Co. v Jefferson Ins. Co.*, 213 AD2d 325, 330, quoting *Cone v Nationwide Mut. Fire Ins. Co.*, 75 NY2d 747, 750 [Kaye, J., dissenting]). Thus, if the sole claim of negligence in the underlying personal injury actions was premised on the fact that LaRocca left NCBA's pickup truck in the middle of the roadway, the inescapable conclusion would be that the automobile exclusion clause in the policy issued by Marine would protect it from having to share the cost of United's settlement. Seeking to avoid such a result, United contends that Marine is nevertheless obligated to provide concurrent coverage since multiple theories of liability were alleged in the underlying action, including a claim that NCBA was negligent in operating the bridge. This contention lacks merit. United mistakenly focuses on possible theories for NCBA's liability and fails to give proper cognizance to the analytical framework for determining coverage issues as enunciated by this Court in *New Hampshire Ins. Co. v Jefferson Ins. Co. (supra)*—a framework that was subsequently reinforced in *Mount Vernon Fire Ins. Co. v Creative Hous.* (88 NY2d 347).

In *New Hampshire Ins. Co.*, a camper attending Camp Merrimac, Inc. was injured when he was struck by a vehicle owned by the camp and operated by one of its employees. The camp's automobile insurer, New Hampshire Insurance Company (New Hampshire), commenced an action seeking a judgment declaring that Jefferson Insurance Company (Jefferson), which issued a general liability policy to the camp, was obligated to defend and indemnify the camp.

New Hampshire, as the camp's automobile liability carrier, did not contest its duty to defend the camp since the accident arose from the operation of the camp's vehicle. It argued, however, that there were also claims that the camp was negligent in failing to take reasonable precautions to prevent campers from coming into the path of passing vehicles, in failing to erect barriers between the roadways and the play areas, and in hiring counselors with inadequate training and skill. This, it was asserted, invoked the general liability policy issued by Jefferson. Jefferson countered that, irrespective of the theory of liability stated in the complaint, the accident at issue clearly fell within the exclusion clause of it policy, which omitted coverage for " '[b]odily injury * * * arising out of the ownership, maintenance, operation [or] use' " of any vehicle owned or operated by the camp (*supra,* at 326).

In finding that Jefferson was not obligated to defend and indemnify the camp, this Court observed that "whatever theory of liability the resourceful attorney may fashion from the circumstances of a client struck by an automobile, it remains that the immediate and efficient cause of the injury is, in fact, the automobile" (*supra,* at 327). It was further observed that "[a]bsent the injury resulting from the operation of the camp's automobile by its employee, [the injured camper] would have no claim against [the camp]" (*supra,* at 329).

What *New Hampshire Ins. Co.* therefore indicated was that it is the act giving rise to liability that is determinative, not the theories of liability alleged (*cf., Matter of Duncan Petroleum Transp. v Aetna Ins. Co.,* 96 AD2d 942, *affd* 61 NY2d 665; *Ruggerio v Aetna Life & Cas. Co.,* 107 AD2d 744). To the extent that there was any doubt as to the appropriateness of such an analysis (*see, Cone v Nationwide Mut. Fire Ins. Co.,* 75 NY2d 747, *supra; Lalomia v Bankers & Shippers Ins. Co.,* 35 AD2d 114, *affd on opn below* 31 NY2d 830), such doubt was firmly laid to rest with the Court of Appeals decision in *Mount Vernon* (88 NY2d 347, *supra*).

In *Mount Vernon,* the underlying negligence action was premised on an assault that took place inside of a building. The victim of the assault commenced an action against the owner of the building alleging negligent supervision, management and control of the premises. Although the owner sought a defense and indemnification from its insurer, coverage was declined on the basis of an exclusionary clause providing that " 'no coverage shall apply under this policy for any claim, demand or suit based on Assault and Battery' " (*supra,* at 350).*

In resolving the coverage issue, the Court stated: "[T]he language of the policy controls * * * and while the theory pleaded may be the [owner]'s negligent failure to maintain safe premises, the operative act giving rise to any recovery is the assault. While the [owner]'s negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the [owner]'s right to coverage based on the language of the contract between him and the insurer. Merely because the owner might be found liable under some theory of negligence does not overcome the policy's exclusion

---

* The Court of Appeals noted that there is no significant difference between the words "based on" and "arising out of" for purposes of construing exclusionary clauses (*Mount Vernon Fire Ins. Co. v Creative Hous., supra,* at 352).

for injury resulting from assault (*see, New Hampshire Ins. Co. v Jefferson Ins. Co.*, 213 AD2d 325; *Ruggerio v Aetna Life & Cas. Co.*, 107 AD2d 744)." (*Supra,* at 352.)

The Court, pointing to its prior decision in *U.S. Underwriters Ins. Co. v Val-Blue Corp.* (85 NY2d 821), also noted that "if no cause of action would exist but for the assault, the claim is based on assault and the exclusion applies" (*supra,* at 350).

What emerges from *New Hampshire* and *Mount Vernon* is that, while a jury could determine that NCBA was negligent in failing to properly warn approaching drivers that the pickup truck was positioned across the roadway, the mere fact that NCBA could be found liable on this independent theory of recovery does not alter the operative act giving rise to this accident, namely, the use of a NCBA vehicle. Hence, as in *New Hampshire* and *Mount Vernon*, whether or not liability may be predicated on NCBA's operation of the bridge, Marine is entitled to rely upon the exclusionary clause of its policy.

In sum, the insurance policy at issue in this declaratory judgment action contained a broad exclusionary clause applicable to any accident arising out of the ownership, maintenance, operation, or use of a NCBA vehicle. Since the accident that occurred clearly arose from the use of a NCBA vehicle, Marine is under no duty to indemnify the plaintiffs.

Accordingly, the judgment of the Supreme Court, New York County (Richard Lowe, III, J.) entered May 6, 1998, denying plaintiffs' motion for summary judgment, and granting defendant's cross motion for summary judgment dismissing the complaint and declaring that defendant is not obligated to indemnify plaintiffs, should be affirmed, with costs.

ROSENBERGER, J. P., TOM, MAZZARELLI and LERNER, JJ., concur.

Judgment, Supreme Court, New York County, entered May 6, 1998, affirmed, with costs.