438 S.E.2d 59 (1993)
190 W.Va. 267
MARCUM TRUCKING COMPANY, INC., a Corporation; Stollings Trucking Company, Inc., a Corporation; Willis Marcum; M & D Mining Company, Inc., a Corporation; and Frank Frye, Plaintiffs Below, Appellees,
v.
UNITED STATES FIDELITY and GUARANTY COMPANY, a Corporation; Everett Meddings; Vicie Meddings; Troy Browning, Jr., as Administrator of the Estate of Joan Ella Browning; Louise M. Crum, Administratrix of the Estate of Delmas Ronald Crum; Sandra F. Pertee; Elaine Messer; Myrtle Alley; Betty R. Osborne and Michelle Osborne, Defendants Below,
Everett Meddings; Vicie Meddings; Troy Browning, Jr., As Administrator of the Estate of Joan Ella Browning; Louise M. Crum, Administratrix of the Estate of Delmas Ronald Crum; Sandra F. Pertee; Elaine Messer; Myrtle Alley; Betty R. Osborne and Michelle Osborne, Appellees,
United States Fidelity and Guaranty Company, a Corporation, Appellant.
No. 21566.
Supreme Court of Appeals of West Virginia.
Submitted September 15, 1993.
Decided November 23, 1993.
*60 James D. McQueen, Jr., Deborah E. Greenham, McQueen & Brown, L.C., Charleston, for appellant.
Robert B. King, John J. Polak, King, Betts & Allen, Charleston, for appellee, Louise M. Crum.
Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, for appellees, Sandra F. Pertee, Elaine Messer and Myrtle Alley.
J. Brooks Lawson, Jr., Lawson & Lawson, Williamson, for appellee, Troy Browning, Jr.
Lawrence J. Lewis, Huntington, for appellees, Marcum Trucking Co., Inc., Stollings Trucking Co., Inc., Willis Marcum, M & D Mining and Frank Frye.
PER CURIAM:
The defendant/appellant, United States Fidelity & Guaranty Company (USF & G), appeals from an August 28,1992, order of the Circuit Court of Wayne County, which granted summary judgment for the plaintiffs, Marcum Trucking Co., Inc., Stollings Trucking Co., Inc., Willis Marcum, M & D Mining Co., Inc., and Frank Frye. As a result of having the summary judgment order entered against them, USF & G is required to defend and indemnify the plaintiffs for bodily injury and damages arising out of a coal truck accident.
The accident in question occurred on March 20, 1989, when plaintiff/appellee Frank Frye, an employee of Marcum Trucking Company, Inc., was operating a loaded coal truck owned by Marcum Trucking Company, Inc. Frye was travelling northbound on Route 52 but crossed into the southbound lane and went down a hill in the direction of a school bus/car accident which happened a few minutes before his arrival on the scene. Frye tried to maneuver his truck between the school bus and the car. In the process, he struck and killed a pedestrian who was assisting with the original accident. Frye subsequently lost control of the Marcum truck, which overturned and spilled coal onto a second pedestrian, killing him. The Marcum coal truck hit several other vehicles before it came to a complete stop.
As a result of the accident, two wrongful death suits and three personal injury suits were instituted in the Circuit Court of Wayne County. All of the civil actions contain allegations that the respective parties suffered injuries and damages proximately caused in part or in whole by the negligent, knowing, willful, wanton and reckless operation of a coal truck by Marcum Trucking Co., Inc., and/or Frank Frye.
As of the date of the accident, March 20, 1989, USF & G insured the plaintiffs under a Commercial General Liability Policy with general liability limits of One Million Dollars ($1,000,000.00). In addition, the plaintiffs carried a "business auto policy" with Liberty Mutual Insurance Company which was in effect on March 20, 1989. This policy also contained general liability limits of One Million *61 Dollars ($1,000,000.00). The Liberty Mutual policy provided coverage, and Liberty Mutual has indemnified the plaintiffs for the March 20, 1989 accident.
In its Insuring Agreement, the USF & G commercial liability policy provides that "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." USF & G maintains that it does not provide business auto coverage for Marcum Trucking Co., Inc., Willis Marcum, Stollings Trucking Co., Inc., M & D Mining Co., Inc., or Frank Frye. However, the plaintiffs argue that they are entitled to coverage from USF & G for the coal truck accident because of the "ambiguous auto exclusionary" language found in their General Commercial Liability Policy with USF & G.
Following oral arguments on August 14, 1992, the Circuit Court of Wayne County granted the plaintiffs' motion for summary judgment. In an order dated August 28, 1992, the Court found that it "was of the opinion to grant the plaintiffs' motion for summary judgment based on a finding that the `Products Completed Operation Hazard Provision' of the subject USF & G Commercial General Liability policy obliges the defendant, USF & G Company, to defend and indemnify the plaintiffs for the motor vehicle accident...."
The policy language the parties refer to is found in the following provisions:
COVERAGE A"Exclusion Section 2(g)":
This insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading." (emphasis added.)
DEFINITIONS Section V(7):
"Loading or unloading" means the handling of property:
a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";
b. While it is in or on an aircraft, watercraft or "auto"; or
c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;
but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".
USF & G argues that the exclusionary language in its policy is clear, unambiguous, express, and specific. While the Insuring Agreement does provide that USF & G will pay those sums that the insured becomes obligated to pay as damages because of "bodily injury," USF & G maintains that the policy specifically excludes insurance coverage for bodily injuries and damages arising from the use of any auto owned by any insured or any vehicle entrusted to another by any insured. Further, USF & G contends that the plaintiffs could not have reasonably expected to have auto insurance coverage from USF & G, and that the plaintiffs' understanding of the effect of the exclusionary language was evident when they purchased a separate business automobile liability insurance policy from Liberty Mutual Insurance Company.
In spite of the "use of an auto" exclusion, the plaintiffs maintain that they are entitled to coverage under the "Products-completed operations hazard" provision of the USF & G policy. "Products-completed operations hazards," or "completed operations hazards," generally provide coverage for injury or damage which occurs away from the premises owned or controlled by the insured, and after the insured's operations as to a particular activity have been completed or abandoned.[1] The terms of the "Products-completed operations hazard" provision are found only in the "Definitions" section of the USF & G policy. Section V-11 states that:
11.a. "Products-completed operation hazard" includes all "bodily injury" and *62 "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
b. "Your work" will be deemed completed at the earliest of the following times:
(1) When all of the work called for in your contract has been completed.
(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.
c. This hazard does not include "bodily injury" or "property damage" arising out of:
(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;
(2) The existence of tools, uninstalled equipment or abandoned or unused materials;
(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.
On appeal, USF & G now argues that the Circuit Court of Wayne County erred when it refused to recognize the effect of the policy language which excludes insurance coverage for bodily injury and property damages arising out of the use or entrustment to others of any auto owned by any insured, and which defines "use" to include "loading and unloading."
However, the plaintiffs state that USF & G clearly understood the nature of their business, which is transporting coal, and that this understanding is evidenced by the following classification on the declaration page of the policy: "Truckers including products-completed operation." Citing the doctrine of reasonable expectations, the plaintiffs argue that the products-completed operations hazard provision must be interpreted with the nature of the insureds' businesses in mind.
As we noted above, the plaintiffs' commercial general liability policy with USF & G included coverage for "products-completed operations hazards." The plaintiffs purchased this coverage for an additional premium charge.[2]
While USF & G argues first that the "use of the auto" exclusion is applicable here, it also maintains that coverage provided by the "products-completed operations hazard" is not applicable because the plaintiff's work had not yet been completed or abandoned. The plaintiffs dispute this by stating that the "loading" portion of their work was complete. More importantly, however, the plaintiffs contend that the products-completed operations hazard provides coverage with respect to the transportation of property when injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of the vehicles. In this case, the injured parties' claims in the underlying tort actions *63 all rest in large part on a theory that the unlawful loading of the vehicle created an unsafe condition.
The auto exclusion in the commercial general liability policy excludes from coverage bodily injury or property damage "arising out of the ... use ... of any `auto' ..." and defines "use" to include "operation and `loading and unloading.'" However, 11.c(1) under "Section VDefinitions" states that "[t]his hazard [products-completed operations hazard] does not include `bodily injury' or `property damage' arising out of: the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the `loading or unloading' of it."
We agree that there may appear to be conflicts between the auto exclusion, which USF & G maintains is applicable in this case, and the products-completed operations hazard. For this reason, we find ambiguity in the policy and, therefore, must construe it in such a manner as to provide coverage. "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, National Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987).
Our primary problem with the interpretation of this policy involves the products-completed operations hazard. Specifically, we are troubled by Section V-11.c. We are not unmindful of USF & G's contention that the products-completed liability coverage does not "kick in" until all work has been completed. At the same time, however, we find that it is not at all unreasonable for the plaintiffs, or any insureds, to read this section by itself and understand it to provide coverage in those instances in which "injury or damage arises out of a condition in or on a vehicle created by the `loading or unloading' of it." While this section serves initially as an exclusion, and states that bodily injury or property damage arising out of the transportation of property is not covered, this statement is immediately followed by the word "unless ": "unless the injury or damage arises out of a condition in or on a vehicle created by the `loading or unloading of it.'" What comes after the "unless" is what happened in the case now before us: an overloaded coal truck went out of control and caused injury, damage, and death.
In spite of USF & G's contrary assertions, we find it completely understandable that this "exclusion"Section V-11.ccould be construed to provide coverage in this instance. Exactly how this provision operates to exclude or include coverage within the framework of the products-completed operations hazard is not at all clear. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syllabus point 10, National Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987). "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl. pt. 8, National Mutual Insurance Co. v. McMahon & Sons, Inc., 177 W.Va. 734, 356 S.E.2d 488 (1987).
The insureds' expectations of coverage in this instance were not unreasonable. Painstaking study of the policy provisions would not necessarily have negated any expectations of coverage. In fact, it is this Court's opinion that painstaking study of the policy provisions may actually serve only to confuse the reader even more.
For the foregoing reasons, the August 28, 1992, order of the Circuit Court of Wayne County is affirmed.
Affirmed.
NOTES
[1] See generally, Allen E. Korpela, Annotation, Construction and Application of Clause Excluding from Coverage of Liability Policy "Completed Operations Hazards", 58 A.L.R.3d 12, 18 (1974).
[2] For background information on the development of products liability and completed operations coverage in insurance policies, see Roger C. Henderson, Insurance Protection for Products Liability and Completed OperationsWhat Every Lawyer Should Know, 50 Neb.L.Rev. 415 (1971). The author explains that "[i]n addition to the Comprehensive General Liability policy, one can obtain products hazard and completed operations coverage in connection with the following types of policies: (1) Comprehensive General-Automobile; (2) Manufacturers' and Contractors' Liability; (3) Schedule Liability; (4) Garage Liability; and (5) Owners', Landlords', and Tenants'." Id. at 418. The author cautions that "[t]his does not mean, however, that when one purchases one of the above policies that products hazard and completed operations coverage is automatically included. On the contrary, this coverage has to be specifically purchased by the insured by so electing on the face of the policy or by purchasing an endorsement which either adds the coverage to or deletes the exclusion of the coverage under the basic policy." Id.