617 S.E.2d 851

**WEBSTER COUNTY SOLID WASTE AUTHORITY, Plaintiff Below, Appellant,**

v.

**BRACKENRICH & ASSOCIATES, INC., a West Virginia Corporation; Kanawha Stone Company, Inc., a West Virginia Corporation; Nationwide Mutual Fire Insurance Company, an Ohio Corporation; Nationwide Mutual Insurance Company, an Ohio Corporation, Defendants Below, Appellees.**

**Webster County Solid Waste Authority, Plaintiff Below, Appellee,**

v.

**Brackenrich & Associates, Inc., a West Virginia Corporation; Nationwide Mutual Fire Insurance Company, an Ohio Corporation; Nationwide Mutual Insurance Company, an Ohio Corporation, Defendants Below, Appellees,**

**Kanawha Stone Company, Inc., a West Virginia Corporation, Defendant Below, Appellant.**

**No. 31861.**

Supreme Court of Appeals of West Virginia.

Submitted: May 24, 2005.

Filed: June 30, 2005.

306

Marvin W. Masters, R. Christopher Anderson, David L. White, Masters & Taylor, Charleston, for Webster County Solid Waste Authority.

Bernard R. Mauser, Sutton, for Brackenrich & Associates.

Michelle Roman Fox, Martin & Seibert, Charleston, for Nationwide Mutual Insurance Company.

Kenneth E. Webb, Jr., Bowles Rice McDavid Graff & Love, Charleston, for Kanawha Stone Company, Inc.

Chief Justice ALBRIGHT delivered the Opinion of the Court.

ALBRIGHT, Chief Justice.

Appellants Webster County Solid Waste Authority (the "Authority") and Kanawha Stone Company, Inc. ("Kanawha Stone") appeal from adverse decisions[1] issued by the Circuit Court of Webster County in connection with a declaratory judgment ruling sought by Appellee Nationwide Mutual Fire Insurance Company ("Nationwide") to determine whether there was insurance coverage available under a commercial general liability policy. The Nationwide policy at issue was purchased by Appellee Brackenrich & Associates, Inc. ("Brackenrich"), an engineering firm hired by the Authority to design and supervise the construction of certain upgrades to the Webster County landfill. When the landfill failed to work as designed, the Authority brought suit against both Brackenrich and the contractor, Kanawha Stone, wherein it asserted causes of action grounded in contract, implied and express warranties, negligence, and nuisance. After examining the coverage afforded by the commercial general liability policy, the circuit court determined that the requisite "occurrence" necessary to trigger coverage under the policy was nonexistent and ruled there was no available coverage in connection with the allegations asserted in the complaint filed by the Authority or in the counterclaim filed by Kanawha Stone. Upon our review of the record before us, we reach the same decision as the circuit court and, accordingly, affirm.

## I. Factual and Procedural Background

On February 27, 1995, the Authority entered into a contract with Brackenrich to design an upgrade to the Webster County landfill. Pursuant to this "Agreement for Engineering Services" (the "Agreement"), Brackenrich agreed to furnish various services, which included the design of increased disposal cell capacity for solid waste disposal and the addition of a constructed wetland system to treat leachate from the landfill waste disposal cells before its discharge into the environment. Under the Agreement, Brackenrich was expressly charged with the responsibility of inspecting and supervising the construction. Kanawha Stone was hired by the Authority to perform the construction work on the landfill.[2]

Based on its assertion that the wetlands never worked properly,[3] the Authority filed a complaint in the circuit court against both Brackenrich and Kanawha Stone through which it alleged defects in design, construction, supervision, and inspection of the landfill. In answering the complaint filed against it, Kanawha Stone filed a counterclaim against the Authority for breach of contract in connection with the Authority's failure to pay for the services Kanawha Stone rendered in repairing the landfill. During the discovery phase of this action, the Authority's counsel learned that Brackenrich had a commercial general liability policy in effect during the relevant construction phase of the landfill. When the Authority was granted leave to involve Brackenrich's commercial general liability carrier, Nationwide, in the defective landfill case,[4] Nationwide responded to the third amended complaint by seeking a declaratory judgment from the trial court on the issue of whether the coverage provided by the commercial general liability policy extended to the allegations asserted in the complaint by the Authority against Brackenrich.

By order dated December 22, 2003, the circuit court ruled that there was no cover-

---

1. Based on a motion for clarification filed by Kanawha Stone, the circuit court issued a separate ruling addressing the issue of coverage as to the allegations of the counterclaim filed by Kanawha Stone against the Authority.

2. Under the contract that Kanawha Stone entered into with the Authority, Kanawha Stone was required to perform its construction services pursuant to the specifications provided by Brackenrich.

3. The Authority states that it has spent more than $200,000 to properly dispose of the leachate.

4. The Authority argued that Nationwide had a duty to defend and indemnify Brackenrich and that Nationwide was guilty of bad faith in not settling this matter. Upon motion of Nationwide, the bad faith claim was bifurcated.

age under the commercial general liability policy based on the fact that the allegations of faulty workmanship asserted against Brackenrich in the complaint do not constitute an "occurrence," as defined by the Nationwide policy. Through this appeal, the Authority seeks a reversal of that ruling. Kanawha Stone separately appealed from a denial of coverage ruling in connection with its assertion of a counterclaim against the Authority. By order dated September 8, 2004, this Court accepted the appeals from both the Authority and Kanawha Stone, consolidating the matters for purposes of argument, consideration, and decision.

## II. Standard of Review

Our review of declaratory judgment rulings is plenary, as we announced in syllabus point three of *Cox v. Amick:* "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" 195 W.Va. 608, 466 S.E.2d 459 (1995). And, as we explained in *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995), "the interpretation of an insurance contract ... is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal." *Id.* at 506–07, 466 S.E.2d at 165–66. With these standards in mind, we proceed to determine whether the circuit court committed error in determining that there was no insurance coverage available under the commercial general insurance policy issued by Nationwide.

## III. Discussion

In arguing that the circuit court reached the wrong conclusion with regard to the availability of insurance proceeds, the Authority contends there are two ways to analyze the Nationwide policy to find the necessary coverage. The first approach requires a finding of ambiguity with regard to the provision of "products-completed operations hazard" coverage and a consequent determination that coverage must be provided based on such ambiguity.[5] The second theory upon

which the Authority asserts coverage involves interpreting the professional liability exclusion in a manner to conclude that the allegations of negligence asserted in the complaint do not pertain to the professional services that Brackenrich was specifically hired to provide.[6] We will separately address these two assignments of error.

### A. Policy Ambiguity

The Authority argued below that coverage was available under the "products-completed operations hazard" provision of the policy. That policy language provides as follows:

14.a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

. . . .

c. *This hazard does not include "bodily injury" or "property damage" arising out of:*

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) *Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.* (emphasis supplied)

The circuit court rejected the Authority's argument for coverage under the "products-completed operations hazard" provision by reasoning that this policy language cannot be invoked until there is first shown to have

---

5. *See* Syl. Pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1998) ("It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.").

6. The trial court did not address the validity of the professional liability exclusion based on its finding that no occurrence was alleged through the allegations of the complaint which would in turn trigger coverage under the Nationwide policy.

been an occurrence under the policy by which coverage is triggered. *See Corder v. William W. Smith Excavating Co.*, 210 W.Va. 110, 556 S.E.2d 77 (2001) ("Before any coverage can be found to exist under the 'products-completed operations hazard,' or any other portion of the commercial general liability policy, an 'occurrence' within the policy definition of that term must be determined to have occurred."). *Id.* at 114, 556 S.E.2d at 81 (footnote omitted). The term "occurrence" is defined under the Nationwide policy at issue as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In determining whether there was an occurrence within the meaning of the policy, the trial court looked to this Court's decision in *Corder* where we addressed the availability of coverage under a commercial general liability policy for loss of use caused by a sewer line failure. Although the trial court in *Corder* ruled that the faulty workmanship nature of damages asserted in the complaint took the claims outside the coverage typically provided by a commercial general liability policy, we found the record deficient on appeal as to the cause of the sewer pipe's failure. *Id.* at 117, 556 S.E.2d at 84. Consequently, we found it necessary to remand for the purpose of determining "whether a separate act or event or happening occurred at some point in time that led to the failure of the pipe or whether the pipe's alleged failure is tied to the original acts of repair performed by . . . [the contractor]." *Ibid.*

Our discussion in *Corder* concerning the nature of the risks that commercial general liability policies are intended to cover has specific import to this case:

"The products hazard and completed operations provisions are not intended to cover damage to the insured's products or work project out of which an accident arises. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defec-

tive or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. *The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.*"

210 W.Va. at 115, 556 S.E.2d at 82 (quoting *Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement, Inc.*, 206 W.Va. 506, 511, 526 S.E.2d 28, 33 (1999) and emphasis supplied).

 Based on this clarification of the risks intended to be covered by commercial general liability policies, this Court held in syllabus point two of *Corder*: "Commercial general liability policies are not designed to cover poor workmanship. Poor workmanship, standing alone, does not constitute an 'occurrence' under the standard policy definition of this term as an 'accident including continuous or repeated exposure to substantially the same general harmful conditions.'" 210 W.Va. at 111, 556 S.E.2d at 78, syl. pt. 2. Applying this ruling from *Corder* to the case *sub judice*, the trial court examined the allegations asserted by the Authority, and concluded: "All of Plaintiff Webster's causes of action . . . are based upon allegations of faulty workmanship, whether charged to Defendant Brackenrich in its design, engineering, and inspection of the landfill, or to Defendant Kanawha Stone in its construction thereof, and our Supreme Court has made it clear that faulty workmanship cannot qualify as an 'occurrence.'" Given the faulty workmanship nature of the claims asserted by the Authority against Brackenrich, the trial court reasoned that this Court's rulings compelled a finding that coverage was not available under the terms of the Nationwide commercial general liability policy.

While "conced[ing] that 'faulty workmanship' resulting in damage to the work itself is clearly excluded from the scope of insurance coverage provided under a traditional CGL [commercial general liability] policy," the Authority circuitously attempts to find coverage

by arguing against the applicability of policy exclusionary language that concerns professional negligence. Specifically, the Authority suggests that the allegations in the complaint which center on the negligence of Brackenrich in performing its contractual duties are matters of ordinary negligence, rather than acts of professional negligence.[7] Contending that the professional liability exclusion is inapplicable based on its position that the alleged acts of negligence do not *entirely* come within the delineated professional services for which Brackenrich was hired,[8] the Authority maintains there is coverage under the policy.

██ Despite its attempts to locate coverage under the commercial general liability policy, the Authority never squarely deals with the fundamental issue that the trial court correctly identified. Absent an occurrence, as that term is defined under the policy, there can be no coverage under the policy at issue, or any other commercial general liability policy. In trying to circumvent the rulings of *Corder* and *Erie* regarding the lack of coverage under commercial general liability policies for negligence claims arising from faulty workmanship, the Authority cites the fact that the policy provides coverage for property damage. Because the policy definition of property damage includes "loss of use of tangible property that is not physically injured," the Authority argues that there has to be coverage based on its demand for loss of use damages. In predicating its coverage argument on the type of damages it seeks, the Authority overlooks the fact that the issue of damages is not relevant until an occurrence can first be demonstrated. The policy definition of property damage, which requires that such damage be caused by an occurrence, underscores this point. The policy provides that coverage "applies to 'bodily

injury' and 'property damage' only if: (1)[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' . . . ." Simply put, the Authority's reliance on the definition of property damage as a means of demonstrating coverage is unavailing as that definition, like the policy in general, requires the existence of an occurrence before any legal duty arises with regard to providing coverage.

In its attempt to identify an occurrence that triggered Nationwide's duty to provide coverage under this policy, the Authority lists the following: "(1) Brackenrich's negligent inspection of the landfill and leachate treatment system construction; (2) Brackenrich's negligent testing of materials used in the landfill and leachate treatment system construction; and (3) Brackenrich's negligent quality assurance of the landfill and leachate treatment system construction." Critically, each item that the Authority relies upon to establish an "occurrence" is an act of alleged professional negligence. Arguing that those acts of negligence were accidental, the Authority maintains that those delineated acts qualify as occurrences under the policy definition of that term. This argument, which casts coverage in terms of the negligent acts of Brackenrich, is significantly at odds with the clear line of authority from this Court recognizing the validity of professional liability exclusionary language that exempts faulty or negligent service or workmanship claims from the coverages provided by a commercial general liability policy. *See State Auto. Mut. Ins. Co. v. Alpha Eng'g Servs., Inc.*, 208 W.Va. 713, 542 S.E.2d 876 (2000) (applying professional services exclusion to deny coverage in connection with claims predicated on provision of negligent surveying, mapping, and engineering services).

7. *See, e.g., GRE Ins. Group v. Metro. Boston Housing Partnership, Inc.*, 61 F.3d 79 (1st Cir. 1995) (holding that under Massachusetts law inspection services that are not professional are not within professional services exclusion of comprehensive general liability policy); *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass. App.Ct. 318, 568 N.E.2d 631 (1991) (recognizing that nature of conduct involved is critical inquiry rather than title or position of those involved); *Reliance Ins. Co. v. Nat'l Union Fire Ins. Co.*, 262 A.D.2d 64, 691 N.Y.S.2d 458, 460 (N.Y.App.Div. 1999) (finding that engineering firm's obligation

to perform inspections of contractor's work regarding compliance with contract and safety laws required only "normal powers of supervision and observation" and not "engineering acumen").

8. The Authority states in its brief: "Webster County concedes, as it must, that some of its allegations are professional negligence allegations." It continues to state, however, that "some of them are allegations of ordinary negligence."

■ Responding to the arguments the Authority asserts in support of coverage, Nationwide contends that the Authority's position reflects a flawed understanding of the nature of the coverages afforded by a commercial general liability policy. This type of policy, as this Court explained in *Erie*, is designed to insure personal injury or property damage arising out of the finished product or work performed. 206 W.Va. at 511, 526 S.E.2d at 33. Rather than providing coverage for a product or work performance that fails to meet contractual requirements, the commercial general liability policy is specifically designed to insure against the risk of tort liability for physical injury sustained by third parties as a result of the product or work performed or damages sustained by others from the completed product or finished work. Because faulty workmanship claims are essentially contractual in nature, they are outside the risks assumed by a traditional commercial general liability policy. The inclusion in a standard commercial general liability policy of language that excludes coverage for "professional liability" is specifically designed to shift the risk of liability for claims arising in connection with the performance of professional services away from the insurance carrier and onto the professional. Professionals wishing to insure themselves against the risk of liability in connection with the rendering of their professional services may opt to purchase separate insurance coverage, known as an errors and omissions policy. The professional at issue in this case, Brackenrich, chose not to obtain an errors and omissions policy.

To suggest, as does the Authority, that the nature of the work performed by Brackenrich prevents it from being subject to the faulty workmanship line of cases decided by this Court is simply erroneous. Moreover, the fact that Brackenrich is not a contractor, but an engineering firm, does not remove the alleged negligent provision of its services from the analytical approach employed by this Court in *Corder* and *Erie*, as the Authority contends. Critical to the coverage analysis is the fact that the allegations at issue in the Authority's complaint are rooted in the negligent or faulty performance of the work Brackenrich was hired to perform under the Agreement. As we explained in both *Erie* and *Corder*, allegations of poor work performance are not the types of acts that qualify as an occurrence under a commercial general liability policy. Consequently, we reach the same conclusion the circuit court did and hold that there has been no demonstration of an occurrence that would trigger coverage under the Nationwide policy at issue.

■ Just as the Authority fails to demonstrate the existence of an occurrence under the policy, it similarly fails to prove coverage based on ambiguity. Arguing that this Court found an ambiguity in a commercial general liability policy to exist with regard to the "products-completed operations hazard" provision in *Marcum Trucking Co., Inc. v. U.S. Fidelity and Guaranty Co.*, 190 W.Va. 267, 438 S.E.2d 59 (1993), the Authority suggests that such an ambiguity is similarly present in this case. The specific ambiguity in *Marcum* concerned the use of provisional language in the coverage provisions concerning the products-completed operations hazard pertaining to the loading and unloading of trucks. Applying this Court's holding in syllabus point four of *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998), that "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured," we found the ambiguous policy language to require coverage under the facts of *Marcum*. 190 W.Va. at 271, 438 S.E.2d at 63. No such similar ambiguity exists in the instant case. In its attempt to establish an ambiguity, the Authority points to the purported conflict between classification language on the declarations page of the policy that delineates in categorical fashion "Engineers or Architects" with reference to products and/or completed operations with later exclusionary language which removes from coverage "products or operations for which the classifications in this Coverage Part or in our manual of rules includes products or completed operations."

■ In essence, the Authority suggests that the existence of the professional liability

exclusionary language when compared to the declarations page classification entry creates the necessary ambiguity to require Nationwide to provide coverage. We are not persuaded. We held in syllabus point ten of *McMahon & Sons:*

> An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.

177 W.Va. at 737, 356 S.E.2d at 491. The record indicates that the individual who purchased the policy from Nationwide, J.D. Brackenrich, never understood the policy at issue to provide Brackenrich with "products-completed operations hazard" coverage pertinent to its engineering services. Importantly, Brackenrich never requested that Nationwide indemnify or provide a defense for it when the Authority filed a lawsuit against it. This inaction on Brackenrich's part was based on its clear understanding of the types of coverage its commercial general liability policy did and did not pertain to.[9] There is no dispute that a premium was never charged for the provision of this type of coverage. Upon our careful review of the policy language at issue, we find no ambiguity to exist that would require a finding of coverage. *See McMahon & Sons,* 177 W.Va. at 736, 356 S.E.2d at 490, syl. pt. 4.

 Simply put, there is no basis upon which to conclude that the exclusionary language at issue was not clear to the insured and did not clearly exempt from coverage averments of professional liability.[10] As we held in the syllabus of *Keffer v. Prudential Insurance Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970): "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."

### B. Professional Liability Exclusion

 Notwithstanding the fact that the Agreement pursuant to which Brackenrich was employed specifically delineates inspection of the construction-related work as one of the "engineering services" to be provided, the Authority suggests that such inspection services are outside the ambit of engineering services. Arguing that the inspections involved did not require the professional acumen of an engineer but only the non-professional acumen of an unskilled employee, the Authority posits that such inspections cannot be tied to the engineering duties specified in the Agreement. Given that the Agreement clearly envisioned and required that the necessary inspections related to the landfill construction would be performed by Brackenrich—an engineering firm—we find this argument to be without merit. To suggest that no professional training was required to perform these construction-related inspections simply defies logic as the inspections of the materials being used and the work being performed clearly were related to the engineering duties specified under the Agreement.

All of the allegations of negligence related to the provision of professional services provided by Brackenrich are framed in terms of duties owed by an ordinary, reasonable, prudent engineer. Clearly, the Authority has based its claim against Brackenrich on the negligent provision of professional services and not the negligent provision of services unrelated to the Agreement under which Brackenrich was hired for its professional engineering services. While the Authority suggests that the negligence averments contained in the complaint are both professional and non-professional in nature, the only averments that it suggests qualify as non-professional are the inspection-related allegations. Given the clear obligation to provide such inspection services as part of the duties delineated in the "Agreement for Engineering Services," we do not find the Authority's position on this issue to be persuasive.[11]

---

9. Clearly, an errors and omission policy is the type of insurance policy that Brackenrich would have procured had it wanted to protect itself from assertions of professional liability.

10. Rather than the insured seeking to find coverage, in this case it is a third party—the Authority—who argues that coverage exists based on ambiguous policy language.

11. Even if a professional utilizes the services of a

While the circuit court never reached the issue of the validity of the professional liability exclusionary language in the Nationwide policy,[12] we find no reason not to recognize the language as valid given that we have upheld this same language in previous cases.[13] *See, e.g., Alpha Eng'g Servs.,* 208 W.Va. at 717, 542 S.E.2d at 880. Finding the professional liability exclusion language to be valid, we reject the Authority's argument that coverage is available under the policy based on the inapplicability of the professional liability exclusion.

Based on the foregoing, the decision of the Circuit Court of Webster County is hereby affirmed.

Affirmed.

non-professional in connection with the performance of its contractual services, the professional nonetheless remains the liable party for the work performed. To suggest that the use of any non-professional to perform some part of the professional undertakings contemplated in a professional services contract somehow alters the nature of the services being performed is simply untenable.

**12.** *See supra* note 6.

**13.** Although the trial court did not reach the issue of the exclusionary language due to it determination that coverage was not available, the validity of the professional liability exclusion was clearly raised below by Nationwide. Consequently, established principles of appellate review permit us to address the exclusionary language. *See Stonebraker v. Zinn,* 169 W.Va. 259, 266, 286 S.E.2d 911, 915 (1982) ("It is a well established principle that this Court will not decide nonjurisdictional questions which have not been raised in the court below."); Syl. Pt. 6, in part, *Parker v. Knowlton Const. Co.,* 158 W.Va. 314, 210 S.E.2d 918 (1975) (holding that "the Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review").