**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-1182**
_____

NORTH AMERICAN PRECAST, INCORPORATED; G&G BUILDERS, INCORPORATED,

   Plaintiffs - Appellants,

  v.

GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin corporation,

   Defendant – Appellee.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. John T. Copenhaver, Jr., District Judge. (3:04-cv-01307)

_____

Argued: December 8, 2010   Decided: March 2, 2011

_____

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, and DUNCAN and AGEE, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Brent K. Kesner, KESNER, KESNER & BRAMBLE, Charleston, West Virginia, for Appellants. Thomas L. Rosenberg, ROETZEL & ANDRESS, Columbus, Ohio, for Appellee. **ON BRIEF:** Ellen R. Archibald, KESNER, KESNER & BRAMBLE, Charleston, West Virginia, for Appellants. Klodiana Basko, ROETZEL & ANDRESS, Columbus, Ohio; Stephen W. Funk, ROETZEL & ANDRESS, Akron, Ohio, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

G&G Builders, Incorporated ("G&G Builders") and North American Precast, Incorporated ("NAP") (collectively "the Contractors") appeal the district court's judgment limiting their claims against General Casualty Company of Wisconsin ("General Casualty") for damages arising from the collapse of concrete planks used in the construction of a correctional facility. Specifically, the Contractors challenge the district court's determinations that the insurance policy did not cover loss of use damages, that the Contractors were not entitled to punitive damages as a matter of law, and that G&G Builders had not asserted a third-party Unfair Trade Practices Act claim. For the reasons set forth below, we affirm the district court's judgment.

I.

G&G Builders was the primary contractor for the construction of a jail for the West Virginia Regional Jail and Correctional Facilities Authority. It sub-contracted to NAP the manufacture of hollow core, precast, pre-stressed concrete planks to be used on the project's ceilings and floors. As required under that contract, NAP obtained a comprehensive insurance policy ("the Policy") from General Casualty that

3

included commercial general liability ("CGL") and completed operations coverage.

NAP fabricated the planks and delivered them to the construction site, where G&G Builders used them in constructing the jail. In July 2002, a NAP concrete plank that G&G Builders had installed in the jail's ceiling collapsed and fell to the ground. As a result of the collapse, construction stopped until December 2002, and repairs from the collapse were not completed until April 2003. During this period, G&G Builders notified NAP and General Casualty of the costs of repairs and nature of the damages; General Casualty opened a claim, and subsequently denied coverage after determining that the damages were not covered by the Policy.

In a subsequent lawsuit, NAP and G&G Builders asserted various claims against each other related to their contract and the damages arising from the accident. NAP asked General Casualty to provide a defense to the lawsuit, and General Casualty again denied the request based on its determination that the claims were not covered under the Policy. After almost two years' litigation, NAP and G&G Builders entered into a settlement agreement in which NAP conceded liability and agreed that G&G Builders' damages totaled $1,807,109. In satisfaction of this agreement, NAP paid $500 and assigned its rights against General Casualty to G&G Builders.

4

The Contractors then filed a complaint against General Casualty in the Southern District of West Virginia seeking declaratory judgment that the losses were covered under the Policy and asserting claims for breach of contract, common law bad faith, and violations of West Virginia's Unfair Trade Practices Act ("UTPA") (W. Va. Code 33-11-1 et seq.).

Each party moved for summary judgment in its favor on the issue of coverage. In March 2008, the district court granted and denied each motion in part, holding that the Policy only covered "damage to the masonry walls and concrete floor, if any there be, caused by the collapse of the plank." (J.A. 114.) Relying on several West Virginia cases on point, the court concluded that because "it was not the plank collapsing, but rather the faulty workmanship, which caused the remainder of [the Contractors'] damages," including loss of use damages, those damages were not covered under the Policy. (J.A. 109.) The court also concluded Policy exclusions 2m and 2n would also prohibit recovery of loss of use damages.

The remaining issues in the case were decided in a bifurcated trial wherein the jury determined first that the jail walls and floor were damaged as a result of the accident, that the damage amounted to $94,474.71, and that General Casualty received reasonable notice of G&G Builders' claim of loss. Nothing from that phase of the trial is at issue on appeal.

5

The issues to be determined during the second phase of the trial included the merits of the breach of contract, common law bad faith, and UTPA claims. The Contractors also sought punitive damages for the latter two claims. However, the district court dismissed the Contractors' claims for punitive damages, holding that the evidence — viewed in the light most favorable to them — did not rise to the level of actual malice, which is necessary to sustain a punitive damages award under West Virginia law.

The jury then found that General Casualty breached the Policy, its duty of good faith and fair dealing, and violated the UTPA. It awarded the Contractors over $3,000,000 in damages. The district court granted General Casualty's motion for a new trial and/or remittitur, and gave the Contractors the choice of accepting remittitur in the amount of $300,000 or a new trial on the issue of damages.

The Contractors elected to reject remittitur and proceed with a new trial on damages. Prior to the new trial, General Casualty moved to exclude certain testimony, including testimony of G&G Builders' owner Gary Young, on the basis that he lacked personal knowledge of NAP's damages. The Contractors objected, contending Young's testimony was relevant to G&G Builders' third-party UTPA claim. The district court held that even if the complaint contained such a claim, the proposed integrated

6

pretrial order, which superseded the complaint, did not. Accordingly, it concluded that "[t]estimony in support of a third-party [UTPA] claim not presented at the trial is deemed beyond the scope of the limited retrial chosen by [the Contractors]." (J.A. 1192.)

Following the district court's orders setting out the issues to be determined at the new trial, the Contractors entered into a settlement with General Casualty, subject to their right to appeal the three issues raised in this appeal. The district court entered a final order dismissing the case, and the Contractors noted a timely appeal. This Court has jurisdiction based on 28 U.S.C. § 1291.

II.

The Contractors first appeal the district court's determination that the Policy did not cover loss of use damages arising from the plank collapse. In their opening brief on appeal, the Contractors challenge the court's analysis of whether the collapse constituted an "occurrence" under the terms of the Policy. They do not address the district court's equally dispositive alternative basis for determining that the Policy did not cover such damages: that even if loss of use damages arose from an "occurrence," they would nonetheless be excluded

7

from the Policy under exclusions 2m and 2n.[1]  Indeed, the opening brief's only reference to the exclusions is a conclusory sentence toward the end of their argument that "[n]o Policy exclusion bars coverage for G&G Builders' loss of use damages." (Appellants' Opening Br. 32.)

The Contractors assert they preserved this issue because they broadly asserted error based on the determination of Policy coverage, and they were not required to address the exclusions at length until General Casualty mentioned them in the response brief.  This argument misses the point.  Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal.  See <u>11126 Baltimore Boulevard, Inc. v.</u>

---

[1] Policy provision 2m excluded from coverage property damage arising out of "[a] defect, deficiency, inadequacy or dangerous condition" or "[a] delay or failure . . . to perform a contract or agreement in accordance with its terms."  (J.A. 59.)  Policy provision 2n excluded from coverage "[d]amages claimed for any loss, costs or expense incurred . . . for the loss of use [of the impaired property] [i]f such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."  (J.A. 112 (emphasis omitted).)

*Prince George's County*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (en banc)).

While the Contractors' frame the issue raised on appeal broadly, Federal Rule of Appellate Procedure 28(a)(9)(A) requires the parties do more than just cast a wide net within which any number of arguments could fall; it requires that a party actually address and analyze what it is about the lower court's decision they contend was error. Here, the Contractors only raised arguments related to the district court's determination that the accident did not constitute an "occurrence" under the terms of the Policy. Even if we were to accept those arguments, the district court's dispositive determination regarding the Policy's exemptions remains unaffected and independently supports its grant of summary judgment on the issue of coverage. The Contractors were required to challenge that holding in their opening brief in order to preserve a challenge of the entire basis for the court's determination that the Policy did not cover the claimed loss of use damages.

The Contractors' fleeting reference to the exclusions in the opening brief fails to satisfy this requirement because it does not mention that the district court held otherwise, let alone assert a basis for that holding being incorrect. It simply posits without discussion that no exemptions bar

9

recovery. The first time the Contractors challenge the district court's holding with regard to the exemptions is in their reply brief. However, the Court will not consider issues raised for the first time in a reply brief. See United States v. Brooks, 524 F.3d 549, 556 n.11 (4th Cir. 2008); Yousefi v. United States INS, 260 F.3d 318, 326 (4th Cir. 2001) ("Because [the] opening brief fails to raise a challenge to [a basis for the agency's decision], he has abandoned it. The fact that [he] pursues this issue in his reply brief does not redeem his failure to do so in the opening brief." (internal citations omitted)); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999).

Because the exemptions provide an independent basis for the district court's order granting summary judgment to General Casualty, and because the Contractors abandoned any challenge to that determination on appeal by failing to raise it in their opening brief, we need not consider the underlying merits of their argument.[2] See, e.g., Atwood v. Union Carbide Corp., 847

---

[2] Even if the Contractors had preserved the issue, the district court did not err in concluding that the claimed loss of use damages are not covered under the Policy. The Policy covers "bodily injury" and "property damage" "caused by an 'occurrence,'" and "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. 58, 60.) "Absent an occurrence, as that term is defined under the policy, there can be no coverage under the policy at issue, or any other commercial general liability policy." Webster County Solid Waste Auth. v. Brackenrich & Assocs, Inc., 617 S.E.2d 851, 857 (Continued)

10

F.2d 278, 280 (5th Cir. 1988) (holding that where an issue "constituted an independent ground for [the disposition] below, appellants were required to raise it to have any chance of prevailing in [their] appeal").

## III.

The Contractors next challenge the district court's determination that they were not entitled to an award of punitive damages as a matter of law. In <u>McCormick v. Allstate Insurance Co.</u>, 505 S.E.2d 454 (W. Va. 1998), the West Virginia Supreme Court of Appeals set out the standard for recovering

---

(W. Va. 2005). "Commercial general liability policies are not designed to cover poor workmanship. Poor workmanship, standing alone, does not constitute an 'occurrence' under the standard policy definition of this term as an 'accident' including continuous or repeated exposure to substantially the same generally harmful conditions." <u>Id.</u> at 856 (quotation and citation omitted). Moreover, "damages to a building sustained . . . as the result of a breach of a construction contract due to a contractor's faulty workmanship are a business risk to be borne by the contractor and not by his commercial general liability insurer." <u>Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement, Inc.</u>, 526 S.E.2d 28, 34 (W. Va. 1999). The Contractors seek to establish an "occurrence" based on an act of alleged professional negligence, which is not permitted under West Virginia law. <u>E.g.</u>, <u>Brackenrich</u>, 617 S.E.2d at 857-58. For these reasons, and as explained in greater detail in the district court's March 31, 2008 order, the Contractors' loss of use damages are not covered under the Policy because it was not the plank's collapse, but rather the faulty workmanship, which caused those damages.

punitive damages where an insured brings a claim against an insurance carrier:

> [P]unitive damages shall not be awarded against the insurer [in an action brought under the UTPA] unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the insurance company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally utilized an unfair business practice in settling, or failing to settle, the insured's claim.

Id. at 459. The court also referred to prior case law applying the "actual malice" standard to observe that an insurance company's "'preconceived disposition to deny the claim . . . did not rise to the level of malice' necessary for an award of punitive damages." Id. at 458 (quoting Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73, 81 (W. Va. 1986)). And it further reiterated that this standard was intended "to be a bright line standard, highly susceptible to summary judgment for the defendant" because "[u]nless the policyholder is able to introduce evidence of intentional injury — not negligence, lack of judgment, incompetence, or bureaucratic confusion — the issue of punitive damages should not be submitted to the jury." Id. (quoting Hayseeds, 352 S.E.2d at 80-81).

We have reviewed the evidence the Contractors point to as creating a triable issue as to whether punitive damages are appropriate. It does not rise to the level of showing intentional injury. At most, it shows that General Casualty was

12

aware of the Contractors' claim, did not believe the Policy provided coverage for the claim, and therefore denied the claim. While such evidence demonstrates a disagreement over coverage, it is not evidence of malice. Moreover, when General Casualty declined coverage, it instructed that if the Contractors became "aware of any information that might suggest coverage exists, feel free to tender it to" General Casualty's agent. (J.A. 1491.) This evidence hardly rises to the level of showing intentionally injurious action toward the Contractors.

For these reasons, we conclude the district court did not err in granting General Casualty's motion to strike the evidence of punitive damages.

IV.

Lastly, the Contractors assert the district court erred in ruling they "waived G&G Builders' third party UTPA claim" because G&G Builders never intentionally relinquished their right to pursue one. (Appellants' Opening Br. 37.) It is undisputed that the Contractors brought a UTPA claim based on NAP's injuries; however, the Contractors assert that they also brought a second UTPA claim ("third-party claim") asserting damages based on G&G Builders' injuries. As proof, they point to the consistent use of the plural term "plaintiffs" in their complaint and the integrated pretrial order as proof that two

13

claims were being brought. Because use of the plural meant that two "mirror-image UTPA claims were at issue," they contend the district court erred in holding that they waived the third-party claim. (Appellants' Opening Br. 39.)

The problem with the Contractors' argument is that it misstates the district court's holding in two respects – first, it treats the holding as if the district court awarded General Casualty judgment as a matter of law on this point, and second, it describes the holding in terms of "waiver."

The district court's ruling about G&G Builders' third-party UTPA claim came as part of its discussion about a motion in limine to exclude certain testimony about G&G Builders' damages during the new trial on damages. The district court's determinations about a third-party UTPA claim are thus part of its holding as to the admissibility of and limitations on that testimony.

More importantly, the district court did not hold that G&G Builders "waived" a third party claim. Instead, it held that G&G Builders had not alleged a third-party claim. First, the court observed that any allegations in the complaint were "immaterial" to its analysis of the issue because "[t]hey were superseded by the proposed integrated pretrial order entered August 13, 2008." (J.A. 1184.) Then it noted that the words "third party" "appear nowhere in the August 13, 2008, integrated

pretrial order" or subsequent written and oral discussions of the issues remaining in the case, including the jury instructions about the UTPA claim that were given in the first trial. (J.A. 1185.) In light of this record, the court concluded that G&G Builders' arguments that it had raised a third-party UTPA claim "strain[ed] credulity" and it held that "[t]estimony in support of a third-party [UTPA] claim not presented at the trial is deemed beyond the scope of the limited retrial chosen by" the Contractors. (J.A. 1192.)

"Waiver" is never mentioned in the court's discussion and was not a basis for its determination. The Contractors are thus challenging a holding the district court never made. But even if we construe their arguments to challenge the district court's dispositive holding on this issue, we find no error. Assuming the complaint alleged a third-party UTPA claim based on G&G Builders' injuries, the causes of action identified in the integrated pretrial order would supersede the complaint. See Fed. R. Civil Pro. 16(d); Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 (2007) ("[A] final pretrial order . . . supersede[s] all prior pleadings and 'control[s] the subsequent course of the action." (quotation omitted)). While the integrated pretrial order refers to the plural "plaintiffs" and "claims," it does not delineate first or third-party claims. Given that NAP had assigned its rights against General Casualty

15

to G&G Builders, and that both NAP and G&G Builders are named plaintiffs in the case, the designation of the plural is hardly dispositive as to the nature of the UTPA claims that were brought. Our review of the record leads us to conclude there is no foundation for the argument — an argument that was first made during preparations for the new trial on damages — that G&G Builders brought a separate third-party UTPA claim. Until that time, the Contractors never specifically mentioned a third-party claim, nor had they acted as if they were pursuing such a claim through the presentation of evidence of G&G Builders' damages or the wording of jury instructions about such a claim. As the district court's September 15, 2009 opinion explains, the record simply does not support the conclusion that G&G Builders' alleged a third-party UTPA claim in this case.

V.

For the aforementioned reasons, the district court's judgment is

AFFIRMED.

16